**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **26-MJ-108 (ZMF)** |
| **SAMUEL FAPOHUNDA** | : | |

**DEFENDANT'S OPPOSITION**
**TO GOVERNMENT'S MOTION FOR REVIEW OF RELEASE ORDER**

Pending before this Honorable Court is the government's motion for review of the release order issued by Magistrate Judge Zia M. Faruqui on July 6, 2026, releasing Samuel Fapohunda to the third-party custody of the Butterflies Effect in-patient substance abuse treatment program. Because the combination of conditions of release imposed by Judge Faruqui will reasonably assure Mr. Fapohunda's appearance in court and the safety of the community, the government's request should be denied. Under the circumstances of this case and given Mr. Fapohunda's background, the restrictive conditions of home incarceration with electronic monitoring and around-the-clock supervision at the residential treatment program are sufficient, and pretrial detention is unnecessary. The government's description of Mr. Fapohunda's background is not accurate and does not support a finding that he is a danger to the community or a flight risk. In opposition to the government's appeal, Mr. Fapohunda, through undersigned counsel, respectfully submits the following.

**Argument**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or

combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained:  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). Generally, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Here, the government seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E), because the offense involves a firearm and pursuant to § 3142(f)(2)(A), based on a claim that Mr. Fapohunda is a serious risk of flight. *See* ECF 9 at 1. Under these provisions, detention is permissible only if there are no conditions or combination of conditions that will reasonably assure the safety of the community and Mr. Fapohunda's appearance in court. There is no rebuttable presumption that applies here, *see* 18 U.S.C. § 3142(e)(3), and the government bears the burden of proof.

The government's argument is based largely on two inaccurate characterizations of Mr. Fapohunda's prior record. First, Mr. Fapohunda was not previously convicted of an armed robbery "for holding a gun to a man's head," as the government claims, ECF 9 at 10, but rather entered an Alford plea to an unarmed robbery after another man recanted a claim that Mr. Fapohunda possessed a firearm during a robbery. Second, Mr. Fapohunda's criminal history includes one missed court date which lead to 60, very difficult, days at the District of Columbia jail. He did not willfully fail to appear in a Maryland case but rather was detained in one matter

when due to appear in another. A review of the factors set forth in the Bail Reform Act demonstrates that the government has not met its burden here, and the strict conditions imposed by Judge Faruqui mitigate any potential danger to the community or risk of flight.

**A.  Nature and Circumstances of the Offense and Weight of the Evidence**

Mr. Fapohunda is charges with possessing a firearm after previously being convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g). According to government agents, the firearm was found on his person, and for this reason, the government argues that the weight of the evidence is significant. To prove a violation of § 922(g), however, the government must prove that Mr. Fapohunda knew he was previously convicted of an offense punishable by a term exceeding one year. Mr. Fapohunda has three prior convictions: a misdemeanor simple assault in D.C. Superior Court for which he was sentenced to 60 days incarceration; a petit larceny in Virginia for which he was sentenced to two months incarceration; and an unarmed robbery in Virginia for which he was sentenced to serve 12 months incarceration. While the robbery offense was a felony offense, there is evidence that he was not aware of that: specifically, prior to his arrest in this case, Mr. Fapohunda applied for a concealed carry permit in the State of Maryland, suggesting he was not aware that he was a prohibit person under § 922(g). Thus, while the evidence may be strong because the firearm allegedly was recovered from his person, there are other factors supporting a defense to the charged offense.

The government also suggests that Mr. Fapohunda is a greater danger to the community because "[t]he vehicle contained multiple controlled substances, a large amount of cash, and drug dealing paraphernalia." ECF 9 at 9. The record, however, does not support a finding that Mr. Fapohunda was involved in drug dealing as the government argues. Two controlled

3

substances were found in the car—marijuana and a cough medication (promethazine hydrocholoride and codeine phosphate oral solution). The marijuana, while illegal under federal law, weighed less than the maximum amount that may be lawfully possessed in the District of Columba. According to the police, Mr. Fapohunda admitted that he was smoking the marijuana when the police approached the car, and the woman who was in the car with him had a burnt marijuana cigarette in her hand when she exited the car. The liquid cough medication is commonly known as "lean" when it is abused by individuals, like Mr. Fapohunda, who are addicted to controlled substances. The marijuana packages found in the car were used packages containing marijuana residue, and the plastic gloves found in the car were used to cover the bottle containing the liquid cough medication to prevent it from spilling. The scale in the car was used to weigh marijuana bought at a dispensary, and Mr. Fapohunda earned money through his lawful employment. He was not selling any controlled substance.

The government also argues that Mr. Fapohunda is facing a Guideline range potentially as high as 63 to 78 months, ECF 9 at 8, but arrives at that range by including an enhancement for possessing the firearm in connection with a felony drug offense when there was no such felony drug offense. Alternatively, the government argues that the range would be 41 to 51 months, but that range fails to consider potential acceptance of responsibility, which would reduce the range to 30 to 37 months. Moreover, the Guidelines, of course, are not mandatory, and Mr. Fapohunda has a strong incentive to prove that a lengthy sentence is not necessary by demonstrating his commitment to treatment and rehabilitation.

Because the evidence does not support the government's claim regarding the substances found in the car, when considering the nature of the offense, the Court should consider only the charged possessory gun offense. The findings of Judge Bates in a recent decision apply equally

here:

> The nature and circumstances of the offense [of felon in possession of a firearm] do not strongly show that [a defendant] is a flight risk or a danger the community. While § 922(g)(1) involves firearms, courts have recognized that it is not a crime of violence under the BRA. *See generally*, *e.g.*, *United States v. Gloster*, 969 F. Supp. 92 (D.D.C. 1997). Additionally, the government alleges only that [the defendant] possessed—not that he used—the firearm at issue. . . . The Court acknowledges the inherent danger that a loaded firearm presents but finds that the allegations here do not weigh heavily in favor of pretrial detention.

*See United States v. Bryant*, 25-cr-097 (JDB), ECF 15 at 2.

## B. Potential Danger to Any Person or the Community

As the Court knows, the issue here is whether Mr. Fapohunda will present a danger to the community if released and is forward-looking. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021) (Katsas, J. concurring in part and dissenting in part) (detention turns on "specific, forward-looking assessment of whether [the defendant] currently pose[s] an unmitigable threat to public safety"). Here, the danger the government points to the possession of a firearm, arguing that the combination of the alleged possession of a firearm and purported possession of drugs makes him a danger. However, as Judge Faruqui found, any such danger is mitigated by the conditions imposed.

Under the current conditions, Mr. Fapohunda is monitored through an electronic ankle monitor and is confined to the residential treatment program in Derwood, Maryland. *See* Exhibit 1. The program his staffed 24 hours a day, seven days a week, and residents are monitored at all times. The program director has been sworn in as a third-party custodian and testified that she will notify the Court if Mr. Fapohunda violates program rules or attempts to leave the program. The program is accredited by the Commission on Accreditation of Rehabilitation Facilities (CARF) and has only a five-bed capacity, enabling it to provide intense treatment and

supervision, including individual counseling and group therapy. This placement not only offers a comprehensive supervision that protects the community in the short term but also provides Mr. Fapohunda with the treatment he needs to overcome his addiction, providing long-term protection.

### C. History and Characteristics of Mr. Fapohunda

Mr. Fapohunda is 27 years old. He grew up in suburban Maryland and has the support of his mother who has appeared at every court appearance to date. He also has a history of employment but suffers from an addiction that began when he was detained at the District of Columbia jail for a misdemeanor simple assault when he was 19 years old.

When Mr. Fapohunda was 17 years old, with the support of his parents, he left high school to attend a military academy. After completing a few weeks of orientation, he was required to pass an examination in order to continue to attend the academy. After several failed attempts, he gave up and left the academy. His father was very disappointed in him, and he, in turn, gave up on himself and began to smoke large amounts of marijuana and get into trouble.

Mr. Fapohunda has three prior convictions based on three events that each occurred when he was 19 years old.[1] First, in April 2018, Mr. Fapohunda was arrest for and later convicted of a misdemeanor simple assault after getting into a fight on a metro train. When he was initially charged with that offense, he failed to take it seriously and missed a court date. As a result, the court ordered him detained. He was held for 60 days that changed his life. During those 60 days at the D.C. jail, drugs were readily available, and Mr. Fapohunda used cocaine and "lean" and

---

[1] The government also references a case in Maryland that was placed on the "stet" docket. The stet docket does not involve any admission or finding of guilt.

began to abuse suboxone. He left the jail with an addiction that he periodically—and unsuccessfully—tried to control and consistently hid from his family.

In June 2018, an armed robbery occurred in Arlington, Virginia. In January 2020, Mr. Fapohunda was charged with the robbery after another man claimed he was involved and the complaining witness said Mr. Fapohunda "looked like" one of the robbers. Mr. Fapohunda consistently maintained his innocence, and the man who identified Mr. Fapohunda later recanted his claim that Mr. Fapohunda possessed a firearm. Apparently due to the weaknesses in the case, the Commonwealth of Virgina made a plea offer that permitted Mr. Fapohunda to enter an Alford plea to robbery (not armed robbery) and obtain a sentence of 12 months followed by a term of supervision. At the time the offer was made, Mr. Fapohunda had nearly completed a 12-mount term while waiting for his trial. On the advice of his counsel, he accepted the offer, but there was no finding that he ever possessed a firearm. Mr. Fapohunda successfully completed his term of supervision in that matter.

In June 2019—after the robbery occurred but before Mr. Fapohunda was charged in that matter—Mr. Fapohunda was arrested in relation to the theft of a car and entered a guilty plea to petit larceny. He was sentenced to a term of 12 months, with all but two months suspended.

Despite his addiction and legal issues, Mr. Fapohunda has consistently maintained employment. He has worked at several restaurants, including IHOP, Ruby Tuesdays, and Johnny Rockets, and he worked for a short time at UPS. After serving his sentence for the Virginia robbery offense, he obtained a job at D.C. Rentals, where he worked for a year before he was arrested and charged with an offense in Maryland. He was later acquitted of that offense and again released in October 2025. He then obtained a job at Amazon, where he worked until obtaining a better position with First Coast Security as an unarmed patrol officer at the Amazon

7

Data Center in Frederick, Maryland. Just before his arrest in this case, Mr. Fapohunda was promoted to a supervisor position.

Following his arrest in this case, Mr. Fapohunda initially sought release to the thirty-party custody of his mother, but at the initial detention hearing, Judge Faruqui suggested that a treatment program may be a more suitable release plan. When Judge Faruqui made this suggestion, Mr. Fapohunda began to sob, not because he feared detention but because he believed Judge Faruqui had "seen through him," and recognized the addiction he had been hiding for years. Mr. Fapohunda instantly knew he had to face his addiction. The following day, he admitted his drug use to his mother and felt relief. He is ready to accept the treatment he needs. His willingness to admit his addiction and seek treatment further supports a finding that residential treatment will mitigate any danger to the community.

### D. Risk of Flight

The government also argues that Mr. Fapohunda is a serious risk of flight, but as Judge Faruqui found, the record does not support such a finding. Mr. Fapohunda has previously missed one court date. That was eight years ago, on May 31, 2018, in the D.C. Superior Court misdemeanor assault case. Because he missed that court date, he was detained at the D.C. jail for 60 days and learned a hard less regarding the importance of appearing in court when required. He is committed to never making that mistake again, and his successful completion of supervision in Virginia demonstrates that commitment.

The government argues that Mr. Fapohunda also missed court dates in the Maryland matter that was placed on the stet docket. While it is technically true that he did not appear in court on required dates in that matter, he did not willfully fail to appear. On the dates he failed to

appear, he was detained in relation to other charges. He was later acquitted of those charges, and the bench warrant in the stet docket matter was quashed.

## Conclusion

For the foregoing reasons and such other reason as may be presented at the July 7, 2026 hearing on the government's appeal, Mr. Fapohunda respectfully moves this Honorable Court to deny the government's request for pretrial detention and uphold Judge Faruqui's release order, releasing Mr. Fapohunda on the conditions of home incarceration with electronic monitoring at the Butterflies Effect facility. These conditions are sufficient to reasonably assure Mr. Fapohunda's appearance in court and the safety of the community.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500

9